Atkinson, Judge,
reviewing the facts found to be established, delivered the opinion of the court:
This is a claim for 10 per cent increased pay and also for commutation of quarters, rations, heat, and light of an giffcer *274 in the United States Navy while assigned to and the performance of duty in the investigation of different sites in Alaska for suitable depots for coal and other fuel for the supply of naval steamships. Plaintiff was also ordered to perform the duties of medical officer of the expedition and such other duties as the Secretary of the Navy might direct. He had charge of the purchasing of supplies, the employing of mining and consulting engineers and other employees, and arranging such transportation as might be necessary to further the purposes of the coal development of that region. This action was taken by the Secretary of the Navy in pursuance of the requirements of the act of August 22, 1912, 37 Stats.. 338.
On August 22, 1912, plaintiff was detached from the Bureau of Steam Engineering, Navy Department, Washington, D. C., and ordered to Alaska, arriving at Katalla, Alaska, September 15, 1912, and established permanent living quarters, office, and headquarters at Pile Drive Point, from which point he made trips at irregular intervals to various coal fields in said section. On December 17,1912, he was ordered by the Secretary to return to Washington for temporary duty in the Bureau of Steam Engineering, Navy Department, arriving at said city January 23, 1913, where he remained until March’ 24 of said year, when he was again ordered to duty in Alaska. He arrived at Katalla May 1, 1913, and at once resumed his duties and discharged them in the same manner as was done under his previous assignment. Having completed the work assigned to him in Alaska, he was ordered by the Secretary of the Navy, on August 20, 1913, 'to report to Washington, where he arrived September 8, 1913.
During the period embraced by the two assignments above stated, plaintiff received pay appropriate to his rank and length of service at $2,280 per annum; but increased pay for shore duty beyond the continental limits of the United States was not allowed, nor quarters in kind, commutation of quarters, heat and light allowed to him by the Treasury Department, because all of his actual and necessary expenses during his stay in Alaska were paid by the United States.
*275 There is no controversy as to the facts involved, consequently the question to be determined by the court is one of law only.
The case is governed by the following provisions of law, viz, the act of May 13,1908, 37 Stats., 128, which reads:
“All officers on sea duty and all officers on shore duty beyond the continental limits of the United States shall while so serving receive ten per centum additional of their salaries and increase as above provided, and such increase shall commence from the date of reporting for duty on board ship or the date of sailing from the United States for shore duty beyond the seas or to join a ship in foreign waters.”
“ Nothing herein shall be construed so as to reduce the pay or allowances now authorized by law for any commissioned, warrant, or appointed officer or any enlisted man of the active or retired lists of the Navy, and all laws inconsistent with this provision are hereby repealed.”
Also the act of March 3, 1901, 31 Stats., 1108, which is as follows:
“That officers of the Navy, and officers and enlisted men of the Marine Corps, who have been detailed, or may hereafter be detailed, for shore duty in Alaska, the Philippine Islands, Guam, or elsewhere beyond the continental limits of the United States, shall be considered as having been detailed for ‘shore duty beyond seas,’ and shall receive pay accordingly, with such additional pay as may be provided by law for service in island possessions of the United States.”
The defendants contend that the instant case is controlled by Carden’s case, 45 C. Cls., 171, which rested mainly upon the act of June 30, 1902, 32 Stats., 512, which provides: “ For additional ten per centum increase on pay of commissioned officers serving at foreign stations * * Car-den was a captain in the Bevenue-Cutter Service-, was detached from his vessel by the Secretary of the Treasury and ordered to Europe to investigate certain trade relations. The service was independent of his regular duties, requiring him to travel from place to place. He opened offices in different cities, but remained only a short time in any one place; his incidental expenses were paid by the Government.' The only question in that case was whether he was serving at foreign stations and therefore entitled to 10 per cent extra pay while beyond the continental limits of the United States.
*276 The claim in the instant case depends upon the construction of another statute, namely, the act of May 13, 1908, supra, wherein no such qualification is contained. The act simply requires shore duty beyond the continental limits of the United States, and defines shore duty in Alaska specifically as one of the kinds of duty for which the increase of 10 per cent in pay is provided. The question, therefore, as to whether service under the act of 1902, supra, is required to be at some recognized “ station ” does not arise in this case. In the present case the service was in Alaska, and the plaintiff therefore is entitled to recover the 10 per cent increase of salary during the time for which he sues, as shown by the conclusion of law.
Judgment will be accordingly entered against the United States in his favor for the sum of $279.20 for such extra pay, but his claim for commutation of quarters, heat, and light during said period is dismissed for the reason that all of his actual and necessary expenses while performing said duties were paid by the United States.
It is so ordered.
All concur.